**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

DONALD D. PARKELL,                )
                                  )
            Plaintiff,            )
                                  )
      v.                          )      C.A. No. 17-157 (LPS)
                                  )
DAVID PIERCE, *et al.*,           )
                                  )
            Defendants.           )

## MOTION AND MEMORANDUM OF LAW FOR REARGUMENT

Pursuant to Local Rule 7.1.5, Robert M. Coupe, Perry Phelps and David Pierce ("Movants") respectfully request that the Court reconsider its decision deferring ruling on Movant's qualified immunity regarding Count III of the Third Amended Complaint (D.I. 41, the "TAC") because Movants conceded the facts as alleged for purposes of qualified immunity and because qualified immunity is meant to be decided at the pleading stage, as set forth in greater detail herein.

## BACKGROUND

On June 22, 2018, the Court issued its Memorandum and Order dismissing three defendants[1] and most of Parkell's TAC. (D.I. 50, 51). The sole claim therefore remaining[2] is a "deliberate indifference" claim for "failure to protect" against the Movants based upon a hodgepodge of "policies" alleged to have been in place during Movants' tenures as DOC

---

[1] In addition to Movants, Warden Metzger, Deputy Warden Phil Parker and former Governor Markell were named as defendants in the TAC.

[2] The Court granted Parkell 30 days to amend (for the fourth time). That deadline is July 23, 2018.

commissioners and warden.  Specifically, the Court held the following policies stated a claim of

an unreasonable risk of Eighth Amendment injury to Parkell:[3]

> (1) a failure to train correctional officers at JTVCC; (2) failure to discipline or investigate the use of force and encouragement of abuse of inmates; (3) chronic and severe under-staffing, including a 'vacant positions' policy that required 90%[4] of positions go unfilled; (4) excessive reliance on overtime to staff JTVCC; (5) underpayment of correctional officers; (6) failure to install security cameras; and (7) a refusal to implement recommendations in a 2005 task force report or CLASI Order[].

(D.I. 50 at 15-16). The Court stated that these allegations created a highly dangerous situation in

which inmate violence was "expected." (*Id.* at 16). Although Parkell did not allege a pattern or

practice of incidents similar to the February 2017 riot, the Court concluded that an abduction of a

counselor in 2004, coupled with more recent warnings about staffing from a COAD President,

combined to create a risk that was "'so great and so obvious' that deliberate indifference can be

inferred based on that risk and [Movants'] failure to respond to it."  (D.I. 50 at 17-18) (quoting

*Connick v. Thompson*, 563 U.S. 51 (2011)).  The Court declined to rule out, at this stage, that the

source of Parkell's alleged injuries were not a "'highly predictable consequence' of the overtime,

vacant positions, and pay policies implemented and carried out by Defendants.'"  (*Id.* at 18)

(quoting *Connick*).

With respect to the qualified immunity defense, the Court did not hold that Parkell had a

clearly established right to implementation of any of the above policies.  Nor did the Court hold

that Parkell stated a constitutional claim that any Movant violated an identified, clearly-established

---

[3] Parkell was not physically injured by the rioting inmates or the rescuers.  For that reason, the Court held that Parkell lacked standing to assert excessive force claims. (D.I. 50 at 9). Parkell's alleged injuries are PTSD and a separated rib he claims he sustained while taking Ms. May to the bathroom.

[4] Parkell actually alleged that the policy was that *90 positions*, not *90%* of positions, were required to be vacant. TAC ¶ 106.  And Parkell did not allege this was a policy of the Movants, but rather was a policy of former Governor Markell (who, the Court agreed, is absolutely immune for this staffing decision).  (D.I. 50 at 4-7).

right. Instead, the Court assumed without deciding that Parkell's alleged rights were clearly-established because of the difficulty associated with resolving qualified immunity at the pleading stage. The Court thus denied the defense without prejudice to renew. (D.I. 50 at 20-21).

Because immunity must be decided at the "earliest possible stage," and because there is no Supreme Court case or cases of persuasive authority establishing a right to staffing levels, pay, working hours (or any of the above policies), alone or in combination, as a clearly established right of an inmate, Movants respectfully seek reconsideration of the Court's deferral on the question of immunity.

## **ARGUMENT**[5]

### I.    **Qualified Immunity Must Be Decided at The Earliest Possible Stage of Litigation.**

In deferring on qualified immunity, the Court noted that there were factual issues in dispute and that it was unwise to venture into the qualified immunity analysis.[6] However, "the determination of qualified immunity must be made at an early stage in the litigation—often in a pre-answer motion to dismiss." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 330 (3d Cir. 2014), *rev'd on other grounds*, *Taylor v. Barkes*, 135 S.Ct. 2042 (2015). (Internal citation and quotation omitted). The Supreme Court has repeatedly stressed the importance of resolving qualified immunity at the earliest possible stage of litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *see also Miller v. Clinton County*, 544 F.3d 542, 547 (3d Cir. 2008).

---

[5] Movants understand the strict standard under Local Rule 7.1.5 and that their burden is great. Movant's respectfully assert that it is error to delay ruling on the issue of qualified immunity, particularly where, as here, there has been no effort to identify the right at issue.

[6] The Court cited *Newland v. Reehorst*, 328 F. App'x 788, 791 n. 3 (3d Cir. May 12, 2009), which, as the Court noted, observed (without citation) that it is generally unwise to analyze qualified immunity at the pleading stage. In addition to predating the decision in *Barkes*, it is noteworthy that *Newland* in fact affirmed dismissal on immunity grounds.

Qualified immunity is designed to protect defendants from the burdens of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985); *Barkes*, 766 F.3d at 329. It is meant to protect state officials not only from civil liability when they perform their duties reasonably, but to allow them to carry out their duties without the ever-looming fear and distractions inherent in litigation. *Southerland v. Pennsylvania*, 389 F. App'x 166, 170 (3d. Cir. 2010); *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006). Courts have recognized the need to protect officials from the potential consequences of a suit, including "distraction from official duties, inhibition of discretionary action, and deterrence of able people from public service." *Thomas*, 463 F.3d at 291. In order to avoid these consequences and enable officials to continue performing their duties, it is important that courts act at the pleadings stage to weed out suits where a defendant rightly claims qualified immunity. *See George v. Rehiel*, 738 F.3d 562, 571 (3d Cir. 2013). It is for this reason, that decisions denying qualified immunity are immediately appealable under the collateral order doctrine. *Montanez v. Thompson*, 603 F.3d 243, 248 (3d Cir. 2010). In *George*, the Third Circuit held that the defendants were immune and reversed the denial of a motion to dismiss. *George*, 738 F.3d 562. This Court also recently dismissed a policy claim against a former warden and commissioner on qualified immunity grounds. *See Biddle v. Parker*, 2015 WL 5190694, at *3 (D. Del. Sept. 4, 2015) (holding that there was no Supreme Court decision or robust consensus of cases of persuasive authority supporting the right to the proper implementation of training, supervision and policies for handling inmates with seizure conditions). Parkell should be required, now, to meet his burden to demonstrate the clearly established right he believes Movants violated, and do so with requisite level of specificity. Summary judgment, which

will come only after years of increasingly-onerous civil discovery is, respectfully, not the earliest

possible stage of the litigation.  It is arguably the end.[7]

## II.      Parkell has Failed to Identify a Clearly Established Right with the Required Specificity.

In opposing dismissal, Parkell barely addressed the qualified immunity argument.  (D.I. 45

at 19-20).  Instead of identifying any case law supporting the claim that Movants' failure to enact

the above "policies" amounted to deliberate indifference, Parkell simply posed a question, asking

how could Movants "not know the constitutional rights alleged by Plaintiff were clearly

established," citing a DOC policy that provides that DOC recognizes inmates are entitled to "basic

rights."  (*Id.* at 20).  With zero analysis, Parkell also cited *Farmer v. Brennan*, 511 U.S. 825 (1994)

and unidentified "progeny."  *Farmer* has nothing to do with the alleged claims in this case.[8]

Qualified immunity cannot be overcome (even at the pleading stage) by claims that the

clearly established right is the Eighth Amendment or the right against deliberate indifference.  The

right must be focused on the defendant's alleged conduct and must be defined at a sufficient level

of specificity to give notice to those officials on the ground that their conduct is unconstitutional.

*See*, *e.g.*, *Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 170 (3d Cir.

2016) (holding that it is too broad to define the right as the right to not have a child removed unless

there is "reasonable and articulable evidence of abuse"); *Spady v. Bethlehem Area Sch. Dist.*, 800

F.3d 633, 640 (3d Cir. 2015) (reversing denial of summary judgment, holding that there is no

---

[7] The procedural history of *Barkes* demonstrates this point well.  That action was filed in February 2006.  It was not until 2015, after nearly a decade of litigation, that the Supreme Court, as discussed herein, held the defendants were immune because there was no clearly established right to the policy at issue.  The instructions from the appellate courts that immunity includes an immunity from the burdens of litigation should not ring hollow.

[8] *Farmer* set the general standard for deliberate indifference claims under the Eighth Amendment (*i.e.* criminal recklessness) and concerned claims relating to the danger of not protecting a transgender inmate.

clearly established right to adequate safety protocols during public school swimming class); *Michtavi v. Scism*, 808 F.3d 203, 206 (3d Cir. 2015) (rejecting definition of the clearly established right as an inmate's right to treatment of serious medical needs or the fundamental right to procreate as too broad; focus must be on defendant's conduct); *Barkes*, 766 F.3d at 326 (a constitutional right is not clearly established simply because of the existence of a broad imperative like the one against unreasonable seizures). "[The Supreme Court has] repeatedly told courts . . . not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (Internal citation and quotation omitted); *see Kisela v. Hughes*, 128 S.Ct. 1148 (2018) (summarily reversing denial of qualified immunity to officer who shot suspect where no decision put officer on notice that his specific conduct was unlawful); *District of Columbia v. Wesby*, 138 S.Ct. 577, 591 (2018) (reversing denial of qualified immunity for officers on claims of unlawful arrest and negligent supervision noting lack of a single precedent—"much less a controlling case or robust consensus of cases"—finding a Fourth Amendment violation under similar circumstances.)

Parkell has not made any attempt to define the clearly established law he believes Movants violated. In addition to meeting the elements on a policy claim,[9] to overcome qualified immunity,

---

[9] State officials are not strictly liable for torts that occur under their watch. Nor can they be held liable under *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Supervisors may be held liable under § 1983 in two ways: (1) they participate in the violation of the right or direct others to do so, or had knowledge of, and acquiesced in, a subordinate's unconstitutional conduct; or (2) through enacting or failing to enact policies that cause constitutional injury. *Barkes*, 766 F.3d at 316. "Failure to" claims, regarding supervision, training, and the like, fall within a subset of the policy-making category of supervisor claims. *Id.* With respect to policy claims, at issue here, a supervisor may be liable if the plaintiff pleads and then identifies a specific policy or practice that was not employed by the supervisor ***and that***: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the official was aware that the policy created an unreasonable risk of a constitutional violation; (3) the official was indifferent to that risk; and (4) the constitutional

a plaintiff must also show that the policy or practice that was not employed was required by clearly established law.   For instance, in *Barkes*, the Third Circuit held that a DOC warden and commissioner were not immune because there was sufficient evidence in the record supporting a claim of deliberate indifference based on alleged constitutionally-infirm suicide-prevention-protocol procedures.   *Barkes*, 766 F.3d at 331-32.   But the Supreme Court summarily reversed, holding that the "purported right" to the "proper implementation of adequate suicide prevention protocols" was not clearly established because no decision of the Court established the right and, in fact, no decision of the Court even discussed the right.   *Taylor*, 135 S.Ct. at 2044.   The Court further held that, to the extent a "robust consensus of cases of persuasive authority in the Courts of Appeals" could itself clearly establish the right, the weight of that authority actually suggested that the right did not exist.   *Id.* at 2044. (Internal citation and quotation omitted).   The Court concluded that even if the prison's procedures contained the shortcomings alleged, no precedent made clear to the supervisors they were overseeing a system that violated the Constitution.   *Id.* at 2045; *see also Biddle*, at *2.

Here, Parkell has not alleged any policy that is required by clearly-established law. Movants are unaware of any Supreme Court decision or other consensus of authority—and Parkell has yet to cite to any—holding that prison officials violate the Eighth Amendment by not maintaining certain staffing levels,[10] by relying too much on overtime, by paying allegedly

---

injury was caused by the failure to implement the supervisory practice.   *See Barkes*, 766 F.3d at 317; *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

[10] As noted above, the allegation is that *Markell*, not movants, maintained a policy of leaving 90 positions (not 90% of positions) unfilled.   Beyond this factual allegation against Markell not even being directed to Movants, it is hard to imagine there is any authority in the nation holding that keeping open positions in this amount for a state's entire prison system violates the Eighth Amendment.   Moreover, the legislative immunity the Court found applicable for Markell based on this and other budgetary issues applies equally to Movants.   *See Baraka v. McGreevey*, 481 F.3d 187, 195-96 (3d Cir. 2007) (dismissing governors named as defendants where their actions were

deficient salaries, or by not having cameras.  Amazingly, Parkell failed to allege a specific area of

training the absence of which could plausibly be said to have caused the riot and Parkell's alleged

injuries.  Parkell has pleaded no plausible facts establishing a systemic problem of "encouragement

of" inmate abuse or failing to discipline or investigate such abuse or how these factual allegations

are causally related to the riot and his injuries.  Parkell in fact does not allege a single incident, nor

one tied to any of the Movants.  Indeed, while the Court noted "failure to train" as one of Movants'

"policies" stating a claim against Movants, the Court elsewhere dismissed the training claim.  (D.I.

50 at 13-14).    Finally, Parkell's allegations regarding the alleged failure to implement

recommendations of the 2005 task force and the CLASI Order fall flat as he did not identify a

single, specific task force recommendation ignored that led to Parkell's injury.[11]   And the Court

rejected, for similar reasons, any reliance on the CLASI Order.   (*See* D.I. 50 at 16, note 5

(dismissing the Count based upon the CLASI Order)).   As in *Barkes*, there simply is no clearly-

established precedent on the books making it clear that the Movants were overseeing a system that

violated the Constitution.

Since 1989, the Court has made clear that failure-to-train theories may be advanced only

in "limited circumstances" and that those claims must be made 'in a relevant respect."   *City of*

*Canton, Ohio*, 489 U.S. 378, 389 (1989).  This is intuitive because officers' shortcomings "may

have resulted from factors other than a faulty training program."  *Id.* at 390-91.  It does not "suffice

to prove that an injury or accident could have been avoided if an officer had had better or more

---

properly characterized as legislative); *Bogan v. Scott-Harris*, 523 U.S. 44, 55-56 (1998)
(dismissing city officials, including mayor, alleged to have violated § 1983 based on their voting
in favor of an ordinance).

[11] The closest Parkell came to alleging a failure to comply with the task force report were the same
general allegations relating to "severe understaffing, excessive overtime, complacency, and
inadequate training and supervision." (D.I. 45 at 5).

training, sufficient to equip him to avoid the particular injury-causing conduct." *Id.* at 391. Otherwise, such claims "could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal." *Id.* For liability to attach, the identified deficiency in the "training program must be closely related to the ultimate injury." *Id.* Thus, the courts must ask, "Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" *Id.* "In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city [or supervisor] 'could have done' to prevent the unfortunate incident." *Id* at 392. [12]

In concluding that Plaintiff stated a claim, the Court relied upon the "single incident" theory discussed in *Canton*. (D.I. 50 at 18) (citing *Connick v. Thompson*, 563 U.S. 51 (2011)). Relying on *Canton*, as it is discussed in *Connick*, the Court here ruled that it was a "reasonable inference" that the risk to inmates was "so great and obvious" justifying a departure from the general requirement in deliberate indifference cases that the plaintiff show inaction in response to a pattern of similar violations. But *Canton* and *Connick*, if anything, demonstrate the fallacy of Parkell's nebulous theories. Parkell's allegations don't come close to those discussed in *Canton*, which involved a city deploying a police force armed with firearms to catch fleeing felons with no training on the constitutional limits on the use of deadly force. *Connick*, 563 U.S. at 63. Moreover,

---

[12] *Canton* noted that permitting cases of "failure to train" to go forward under § 1983 "would also engage the federal courts in an endless exercise of second-guessing municipal [or here state] employee-training programs" and that this "exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism." *City of Canton*, 489 U.S. at 392. Parkell's claims regarding the policies should likewise raise serious questions of federalism in this case.

*Connick* actually rejected the single incident theory in that case, concluding that the *Brady* violation there (resulting in the near unjust execution of the plaintiff) was not a highly predictable outcome of the lack of training (because prosecutors receive the required training in law school).[13]

If Parkell's allegations are sufficient to overcome a qualified immunity defense, it is hard to imagine a single inmate claim that would not unlock the doors to discovery against DOC officials. Certainly, any inmate could claim that deficient medical care, excessive force, retaliation, or any other violation is somehow linked to understaffing, disgruntled officers, and the like. Plaintiff's nebulous claims against Movants do not overcome qualified immunity and cannot unlock the door to discovery.

## CONCLUSION

For the above reasons, Defendants respectfully request that the Court reconsider its deferral on qualified immunity with respect to the Movants and Count III of the TAC and grant them such further and other relief that the Court may deem just and appropriate.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

*/s/ Joseph C. Handlon*
Joseph C. Handlon (#3952)
Adria B. Martinelli (#4056)
Deputy Attorneys General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400

Dated: July 6, 2018

*Attorneys for Robert M. Coupe, Perry Phelps and David Pierce*

---

[13] *Canton* likewise held that the evidence in the record before it did not support a deliberate indifference claim; it merely provided the oft-cited *and extreme hypothetical* of when a demonstration of a pattern of similar violations may not be required.

10

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

DONALD D. PARKELL,       )
                            )
     Plaintiff,          )
                            )
     v.                )     C.A. No. 17-157 (LPS)
                            )
DAVID PIERCE, *et al.*,     )
                            )
     Defendants.       )

**<u>ORDER</u>**

This _____ day of _____, 20__, IT IS HEREBY ORDERED that the Defendants' Motion for Reargument is GRANTED and Count III of Plaintiff's Third Amended Complaint against Defendants David Pierce, Perry Phelps, and Robert Coupe, is dismissed with prejudice.

SO ORDERED this _____ day of _____, 2018.

_____
THE HONORABLE LEONARD P. STARK